UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------X

CEO Clubs, Inc., Individually and on Behalf of its members; Hudson Valley Consultants, LLC d/b/a CEO Clubs Benefits; Metropolitan Business Alliance, LLC d/b/a National Association of Business Leadership, Individually and on behalf of its members;

Plaintiffs,

-against-

William M. Worthy, II; David L. Clark; Louis DeLuca; Gary L. Karns, Jr.; David L. Nellson a/k/a David Nelson; Viking Administrators, LLC; Arnold Katz a/k/a Arnie Katz; United States Contractors Trust; IRG Brokerage, LLC d/b/a Insurance Resource Group; Integrated Insurance Marketing, Inc.; Real Benefits Association, LLC,

Defendants.

-------------------------------X

Civil Action No.

**COMPLAINT**

JUDGE MOTZ

10 CIV 06729

Plaintiffs, CEO CLUBS, INC. ("CEO Clubs"), Individually and on Behalf of its Members; HUDSON VALLEY CONSULTANTS, LLC d/b/a CEO CLUBS BENEFITS ("HVC"), Individually; METROPOLITAN BUSINESS ALLIANCE, LLC d/b/a NATIONAL ASSOCIATION OF BUSINESS LEADERSHIP ("NABL"), Individually and on Behalf of its Members, by their attorneys, GOLD, STEWART, KRAVATZ, BENES, LLP, for their Complaint, allege as follows:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**JURISDICTION AND VENUE**

1. This is an action seeking damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961 et. seq., and therefore a federal question exists. Accordingly, both subject matter and personal jurisdiction properly lie in this Court pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists under 28 U.S.C. § 1367 over those state law claims not giving rise to an independent bases for Federal jurisdiction.

2. Venue is proper in this Court as one of the Plaintiffs, CEO Clubs, Inc., and one of the Defendants, IRG Brokerage, LLC, have their principal places of business within the Judicial District, and because, as set forth below, the contracts at issue were negotiated in the Southern District of New York, several of the Defendants regularly and systematically do business in this District, and numerous pertinent events giving rise to the claims at issue occurred in the District.

**THE PARTIES**

3. Plaintiff, CEO Clubs, Inc. ("CEO Clubs") is a New York corporation with its principal place of business at 15 Broad Street, New York, New York 10005. It was originally formed as a 501 C-3 not-for-profit school , incorporated in 1994 in Massachusetts and filed to do business in New York.

4. CEO Clubs is a large, well-established association consisting of more than 15,000 dues-paying members who, in joining the association, receive access to business resources and to affiliated membership benefit programs.

5. The purpose of CEO Clubs is to provide association members with educational resources, networking opportunities and discounted benefit programs.

6. Plaintiff Hudson Valley Consultants, LLC ("HVC") d/b/a CEO Club Benefits is a Nevada corporation with its principal place of business at 2 Changebridge Road, Montville, New Jersey 07045.

7. Plaintiff HVC is the exclusive health benefits agent for CEO Clubs.

8. Kevin Dunn is the Managing Consultant of HVC.

9. Plaintiff Metropolitan Business Alliance, LLC is a North Carolina limited liability company doing business in New York as National Association of Business Leadership ("NABL").

10. NABL's principal place of business is 2 Changebridge Road, Montville, New Jersey 07045.

11. NABL was established to provide its members and members of affiliated associations with educational resources, networking opportunities and discounted benefit programs.

12. Kevin Dunn is the President of NABL.

13. At all times hereinafter referred to, Kevin Dunn was the disclosed Marketing Consultant of CEO Clubs for the purpose of obtaining companies to provide benefits to members of CEO Clubs directly, and through CEO Clubs' affiliation with NABL.

14. Defendant William M. Worthy, II ("Worthy") is a resident of Isle of Palms, South Carolina, having a last known address of 44 Morgan Place, Isle of Palms, South Carolina 29451-2742.

15. Defendant, David L. Clark ("Clark") resides in New Jersey, having a last known address of One Beach Trail, Morristown, New Jersey 07960.

16. Clark is a principal in an entity that goes by the name of Real Benefits Association, LLC, which has offices in New York and New Jersey, including one at 118A Fulton Street, New York, New York 10038.

17. Upon information and belief, Clark owns 100% of Real Benefits Association, LLC.

18. Defendant, Real Benefits Association, LLC ("RBA") is a New Jersey Limited Liability Company which, through its office located at 118A Fulton Street, New York, New York, does business in the State of New York.

19. Defendant IRG Brokerage, LLC is a New York Limited Liability Company located at 20 Madison Avenue, Valhalla, New York 10595.

20. IRG Brokerage, LLC does business in New York as Insurance Resource Group ("IRG").

21. Defendant Louis DeLuca ("DeLuca") is an individual who resides at 1106 Smith Ridge Road, New Canaan, Connecticut 06840.

22. Upon information and belief, DeLuca owns 100% of IRG.

23. Defendant Gary L. Karns, Jr. ("Karns") resides at 1145 Highbrook, #411, Akron, Ohio 44301.

24. Defendant Integrated Insurance Marketing, Inc. ("IIM") is an Ohio corporation owned and/or controlled entirely by Defendants, Karns and DeLuca.

25. Defendant United States Contractors Trust ("USCT") is a Delaware statutory trust, with an address of 10293 Lexington Lakes Boulevard South, Boynton Beach, Florida 33436.

26. Defendant Arnie Katz ("Katz") is an individual residing or conducting business at 731 South Highway 101, #2E, Solana Beach, California 92075.

27. Defendant David L. Nellson a/k/a David Nelson is the "senior trustee" of USCT.

28. "David L. Nellson a/k/a David Nelson" is believed to be an alias.

29. Defendant Viking Administrators, LLC ("Viking") is a Tennessee limited liability company owned and controlled by Defendant Worthy, with an address of 5201 Kingston Park, Knoxville, Tennessee 37919.

**BACKGROUND**

30. Defendants are all part of a nationwide criminal enterprise that has existed and operated since at least 2001. The purpose of the enterprise is the misappropriation and/or theft of premium dollars from association members by "selling" non-existent limited liability health insurance and/or medical insurance and by manipulating the claims process so that those association members paying premium do not discover that they have been (and are being) defrauded until after additional premiums are paid. Throughout its existence, the criminal enterprise has operated by creating a non-existent master policy, and/or by having policies issued to and by fictitious insurers, and by then selling coverage to association members under the purported master policy through the use of high pressure techniques and false representations, and then by manipulating the claim process by delaying claims so that additional premiums can be collected. Ultimately the claims are denied, leaving the "insureds" not only out premium dollars, but legally responsible for their medical bills as well. At all times the enterprise preyed on unsuspecting association members who looked to their associations to provide benefit programs to them and their employees. In addition to members of CEO Clubs and NABL, the

enterprise has preyed upon members of the Association of Independent Managers, the Transportation Services Association, Inc., and the American Trade Association, among others, and Defendants have solicited and/or sold fictitious insurance products to association members in at least a dozen states. Once their fraud is uncovered, the Defendants change the name of their fictitious carrier, infiltrate another association, and repeat the process. Defendants Worthy, Clark, DeLuca, Katz and USCT are not licensed to sell health insurance products to individuals or to association members, and upon information and belief, are still doing so.

31. Upon information and belief, William Worthy a/k/a William Worthy, II, presently heads the enterprise. In March, 2006, the Nebraska Department of Insurance issued a cease and desist order to Worthy arising out of Worthy's company's sale of limited liability health insurance to Nebraska residents, including Scott and Dorothy Clark who, on or about October 1, 2004 - purchased a "policy" for which insurance did not exist. After selling the insurance and collecting the premium, Worthy's company manipulated the claims process, committed bank fraud by issuing a bad check and continued accepting premiums from other association members even though an insurance policy did not exist. Upon information and belief, William Worthy utilized the United States Postal Service and/or an interstate telephone system to solicit the sale to Scott and Dorothy Clark, and to transmit to them the false policy documents.

32. In 2005, Worthy sold "policies of health insurance" to members of the Transportation Services Association which purported to be underwritten by TIG Premier Insurance Company. The insurer there, like Phoenix Insurance Corp. here, was unaware of its alleged involvement. There too, Worthy did not remit the premiums he stole to the insurer and

failed to pay claims. In furtherance of his scheme, Worthy made false representations through the mails.

33. On October 14, 2004 the New Jersey Department of Insurance charged another plot participant, Defendant Clark with selling health insurance through "illegitimate sham unions, submitting false documents to insurers, improperly withholding insurance premiums and unlawfully charging insurers with association or union dues". In 2009, Clark signed a Consent Order admitting that from 2001 through 2004 he sold group health insurance through a purported union that was later determined not to be an actual labor organization, and that he failed to remit $91,620 premium to insurers, which he misappropriated, that he failed to disclose health insurance premium amounts to insureds, failed to advise insureds that coverage was cancelled and/or did not exist (presumably so he could continue collecting premiums from them) and improperly co-mingled health insurance premiums with Association dues. Clark's license to sell insurance was revoked by that Consent Order. Although he was enjoined from "soliciting insurance and/or health benefits of any kind in the State of New Jersey", he continued to represent himself to sell insurance and he did so.

34. In 2006, South Carolina, the State in which Worthy resides, revoked Worthy's insurance license for misappropriation, *i.e.*, stealing premiums.

35. According to Missouri's Department of Insurance Financial and preferred registration, in 2007, Defendants Worthy, Clark and RBA individually and in concert with others engaged in "junk fax" advertising and issued false and misleading advertising in which they falsely identified themselves as insurers, and failed to actually identify the "coverage" being purchased. The State of Missouri identified several individuals that were injured by Defendants'

fraudulent scheme including one gentleman identified only as "Consumer B" who, in July 2007, responded to an unsolicited fax advertising "low cost quality health insurance" and "free flu shots". After paying $1,707.00 in association dues and premiums, Defendants refused to pay for the "free flu shots" and retained all premiums.

36. In November 2008, the North Carolina Department of Insurance issued a final Consent Cease and Desist Order naming David Clark and Real Benefits Association, Inc., arising out of RBA's selling of unauthorized limited liability medical health insurance plans purportedly insured by an unlicensed entity, Serve America, which was owned in part and/or controlled by Defendant Worthy and his business associates.

37. In 2008 and/or 2009, DeLuca sold and conspired to sell Worthy's Serve America "insurance" to members of the Association of Independent Managers and he improperly retained premiums from those members for non-existent coverage. DeLuca touted that fraudulent AIM Insurance Program on the internet.

38. In 2009, David C. Clark and RBA sold and solicited the purchase of health insurance on the internet and in particular through the websites www.sdsfirst.com, www.atafirst.com, www.rba-ata.com, www.healthtoday.biz, www.servamericaltd.com, www.familyhealthresource.com, www.firstamericanhealthcare.com, and www.myatabenefits.com. Clark received premiums from association members and failed to provide the purchased insurance.

30. Defendant Katz is an unlicensed individual who sells "insurance products" manufactured by Defendants Worthy and Clark through a website www.accesshealth.com and other similar sites.

40. The Tennessee Department of Insurance in March 2010, filed a Petition naming William M. Worthy as a defendant, as well as other individuals and trade associations, alleging that from March 2008 until October 2009, policies of limited medical liability insurance were issued to residents of Tennessee. The Petition alleges that the purported Master Policy was issued to Defendant "Real Benefits Association" which was not licensed as an insurance company or administrator in Texas. The policy allegedly issued to Real Benefits Association was then marketed by William Worthy and Clark through the internet.

41. On June 26, 2009, Defendant Worthy incorporated Defendant Viking so that he could utilize the entity to perpetuate insurance fraud. It was the intent of Worthy to have Viking act as a fictitious third party administrator to delay and deny claims of insureds.

42. In October of 2009, Clark approached Kevin Dunn in Dunn's capacity as agent for CEO Clubs.

43. Clark told Dunn that he and his partner, William Worthy were entering into contractual arrangements with a U.S.- domiciled health insurer that held certificates of authority to issue limited liability medical insurance in most states.

44. In October 2009, Defendant Clark met with Joe Mancuso of Plaintiff CEO Clubs at CEO Clubs' Headquarters in New York City to discuss Defendant Clark's and Worthy's marketing a limited liability medical program to CEO Clubs' members. Clark represented that the program was going to be issued on Phoenix Insurance Company paper.

45. In November, 2009, Defendant Clark attended a meeting at CEO Clubs' headquarters in New York City as part of his and Worthy's performing "due diligence" for the program.

46. In or about November 2009, Clark and Defendant DeLuca met with Kevin Dunn at the Westchester Country Club in Westchester, New York to discuss the marketing of a limited medical liability policy for CEO Clubs' members alleged through Phoenix.

47. On December 18, 2009, Defendants Worthy, Clark, and DeLuca met with Kevin Dunn, at La Bernadin Restaurant in Manhattan to discuss the Limited Medical Liability Program, and to finalize the arrangements for the program. At that meeting, Worthy told all present that he was going to be the program manager, that his partner David Clark was going to be the co-program manager, that Clark's company Real Benefits Association, LLC, was going to perform administrative and marketing tasks, and that Defendant DeLuca and IRG were going to perform customer service and premium billing.

48. As a consequence of that meeting, Worthy, Clark and DeLuca were provided with the opportunity to offer a limited medical liability policy allegedly to be issued by Phoenix Insurance Company to members of CEO Clubs and NABL residing in New York and other states. Clark and/or Worthy emailed what was purported to be a "Phoenix" Master Policy to CEO Clubs and CEO Benefits. That "policy" turned out be a forgery, providing no coverage whatsoever. The delivery of that fraudulent policy constituted mail fraud and/or wire fraud.

49. Thereafter, Worthy, Clark , DeLuca, Katz and Karns utilized telephone lines, email, the internet and facsimile lines to recruit "insurance" customers - all of whom were members of CEO Clubs or NABL or who became members of CEO Clubs or NABL. The telephone representatives and/or facsimiles made false claims about the existence of a Master Phoenix Insurance Company policy. Although a policy did not exist, and thus coverage did not exist, Defendants DeLuca and Katz arranged to collect premiums for the non-existent insurance

coverage and association fees, and did so in a variety of ways including direct bank withdrawal, and the cashing of checks and money - all of which constituted larceny and/or bank fraud. Each solicitation of a CEO Clubs member by telephone or internet was wire fraud, and each time a premium was accepted DeLuca and/or Katz committed larceny.

50. Concomitantly, DeLuca convinced CEO Clubs and NABL to enter into a relationship with Integrated Insurance Marketing (IIM), owned and controlled by DeLuca and Karns, to solicit members for CEO Clubs and NABL.

51. CEO Clubs and NABL entered into an agreement with DeLuca and/or Insurance Resource Group (IRG), which is owned and/or controlled by DeLuca. IRG collected premiums and other monies on behalf of CEO Clubs and NABL which it did not remit to CEO Clubs or NABL, and in so doing, committed larceny.

52. In furtherance of the criminal enterprise, Clark, DeLuca and Katz published internet web sites in which they promoted a limited medial liability program allegedly insured by Phoenix that they were offering to CEO Clubs members. Despite full knowledge that the Phoenix policy did not exist, Worthy, Clark, Karns and DeLuca continued selling the insurance, soliciting and collecting premiums.

53. In effect, and in actuality, Clark, Karns, DeLuca and Katz and their companies committed larceny by selling CEO Clubs' and NABL's members coverage that did not exist, and they committed fraud by knowingly selling insurance that they knew did not exist.

54. DeLuca and Karns, through IIM and/or IRG, controlled the marketing and premium collection for CEO Clubs and NABL members. In order to market to the members of CEO Clubs and NABL, DeLuca and Karns, by and through their companies, and as the alter ego