of their companies, falsely represented to CEO Clubs' and NABL's association members that a Master Policy existed which was of value to those members, and through the use of emails, mail, facsimile, websites and telephone Karns, DeLuca and Clark made false representations to members of CEO Clubs and NABL, in order to induce them to pay the premium. Karns and DeLuca shared the stolen premiums with Worthy and Clark. Upon information and belief, at various times DeLuca and Karns misrepresented to prospective insureds that the insurance was provided by IRG or CEO Health.

55. Clark, DeLuca and Karns established and controlled a "downstream" network of marketers, ending ultimately in retail producers and call centers (or "boiler rooms") who sold these fraudulent insurance plans to the public on behalf of CEO Clubs and NABL, and are responsible for the premiums stolen by those entities, including those stolen by Arnie Katz and his company, Access Now. DeLuca and/or Karns received a financial benefit for the use of these boiler rooms.

56. As part and parcel of his fraud, DeLuca, Karns and Katz moved members of other associations into the CEO Clubs' Insurance Program falsely claiming orally over the telephone, on the internet, in emails and by use of the mail, that a policy of master insurance actually existed. DeLuca, Karns and Katz stole the dues money in that they failed to remit all of the dues to CEO Clubs and/or NABL for the new members.

57. In November 2009, Worthy and Clark represented to Dunn by telephone that CEO Clubs members were now covered by a policy issued by Town and Country Insurance Company. They did so however, without the knowledge and authority of Town and Country Insurance. DeLuca and Karns, in furtherance of the criminal enterprise, and without confirming that a policy

12

existed, issued certificates to association members falsely indicating that Town and Country Insurance issued a policy. The mailing of the false certificates constitutes acts of mail fraud.

58. In December of 2009, Worthy and Clark told Dunn by telephone that Phoenix NAIC number 25623, had issued a group limited medical benefit indemnity policy to CEO Clubs.

59. On January 6, 2010, Worthy, in furtherance of the fraudulent scheme, sent an e-mail to Dunn, with a copy to Clark, purporting to list the jurisdictions in which Phoenix was licensed.

60. Worthy fraudulently sent Dunn by email a "certificate" purportedly issued by Star Group UK/Phoenix Insurance Company of Baltimore, Maryland, with the intent that Dunn would rely upon it, and Dunn did rely on it.

61. On December 11, 2009, David L. Nellson, the "senior trustee" of United States Contractors Trust (USCT), signed a letter addressed to Wilshire Holding Company, LLC. That letter stated: "Please accept this as our undertaking for the acceptance of the limited Mini Medical Plan produced by Wilshire Holding Company through Worldwide Family Benefits Association. . . . USCT will provide a master certificate and policy to Worldwide Family Benefits Association and bind business written from November 1, 2009 based on TPA report supplied WWFBA from Star Group UK / The Phoenix Insurance Company (NAIC #25623) General Policy No. 123740-SK."

62. On January 26, 2010, David Nellson, as "secretary" of "Grand Resources Capital Solutions," wrote a letter to Oceanic Indemnity, stating: "Please take this letter as confirmation that we accept the Reinsurance Treaty, #123740-SK, and acknowledge that this treaty is limited

13

(under the limitation act) to the exposure adopted by United States Contractors Trust (a Delaware Risk Retention Group) for fronting the Wilshire Holding Company, LLC risk only".

63. USCT is not licensed as a risk retention group.

64. In furtherance of the enterprise, and in an attempt to obtain reinsurance for the program, Worthy posted fake letters of credit which he provided to Oceanic Indemnity Corporation, committing bank and wire fraud.

65. Sometime in March 2010, Worthy and Clark led Dunn to believe that USCT was a risk retention group and was the managing general underwriter for Phoenix. By this time Dunn had begun to receive queries from several state regulators and he began to badger Clark for proof that the insurance Dunn's associations were selling was real.

66. Worthy, in an attempt to obstruct justice, and knowing that Dunn would relay whatever Worthy sent to him to State regulators, provided Dunn by email with a policy number 123742-SK (the number of the "Phoenix" policy allegedly issued to NABL was 123740-SK, and the telephone number on each of the two policies was identical), effective November 1, 2009, issued by Star Group UK/Phoenix International Group. The policy was signed by "David Nellson, Senior Trustee."

67. On March 12, 2009 Worthy, in a further attempt to obstruct justice, assured Dunn in an e-mail that Phoenix was still the carrier for Dunn's associations and that USCT was licensed to write insurance in 40 states. Those statements, which Worthy intended Dunn to rely upon, were false constituted wire fraud, and as Worthy knew that his email would be sent to State regulators, also constituted obstruction of justice.

68. On March 16, 2010, Nellson, as "senior trustee" of USCT, sent a letter to Wilshire Holding Corporation, addressed to Worthy, asking for a "no claims" certification from the TPA so that the Wilshire-USCT-Oceanic Indemnity deal could move forward.

69. On March 20, 2010, Clark sent an e-mail to Dunn, with a copy to Worthy, stating:

> I am very pleased to report that our principal's [sic] have made arrangements for a new carrier, better suited to our market, to replace Phoenix effective 1.1.09. There is a meeting scheduled for Monday with all the parties involved to work out the legal arrangements for this book transfer. I anticipate being able to provide each of you with documentation of this new arrangements by mid-week. In the meantime, I can report that all the respective DOI offices have been contacted and made aware of this development. It has been confirmed that Phoenix is on, and has been on, the risk since 1.1.09 and will remain so until this transfer is completed. . . .

70. Clark's statement that "all the respective DOI offices have been contacted and are aware" was false and constitutes wire fraud.

71. On March 22, 2010, David L. Nellson sent a letter to Clark on USCT letterhead:

> It seems that there is some misunderstanding in the marketplace of the relationships between the United States Contractors Trust, a Risk Purchasing Group, the Phoenix Insurance Company, and your marketing organization. The purpose of this letter is to document this relationship. The contractual relationship between Star Group and United States Contractors Trust confirms that the liability coverage issued by Star Group, initiated by their senior underwriter, issued under their binding authority, is binding for Phoenix International Ltd., a subsidiary of the Phoenix Insurance Ltd., which is the ceding company and therefore carries the final risk. Phoenix International Ltd. is fully owned by the Phoenix Insurance Company, CT, and their operational office in Dallas, Texas. Phoenix International Ltd. covers liability under the NAIC registration of their owner. Should there be any issues in regards to this relationship, you may use this letter as support of your efforts in distributing this program through your marketing network.

15

72. Nelson's letter was false, and constitutes an act of Mail Fraud.

73. Throughout the entire period of December 2009 through March 10, 2010, Worthy, Clark, DeLuca, Karns and Katz, individually and through their companies and through their agents, processed more than 4,000 separate premium payments knowing that a valid policy of insurance did not exist.

74. Katz, without authority, sold memberships in NABL to unsuspecting individuals. Katz did not have the authority to sell NABL memberships and he stole the membership dues that he collected. Among the individuals defrauded by Defendant Katz and whose dues he stole, were Sondra Weseman (Jacksonville, Florida); Robert Snowden (Meridian, Mississippi); James Rosenberg (Studio City, California); Patricia Parnell (Garland, Texas); Ina Marie Maddox (Nashville, Tennessee); Ray D. Jack (Strasburg, Virginia); Barbara Henderson (Kennesaw, Georgia); and Emily Haas (Lenhartsville, Pennsylvania). In each case, Katz forwarded counterfeit membership I.D. cards and counterfeit insurance cards through the mail and collected and stole premium dollars. Katz directed people to the www.accesshealth.com website which falsely advised of the affiliation with NABL and the non-existent insurance program. Katz intended that people would rely on this information on the website and part with their money.

75. In March 2010, and on several occasions thereafter, Plaintiffs, by counsel, sent cease and desist letters to Worthy, Clark, DeLuca, Karns and Katz demanding that they stop soliciting their members and that they cease collecting premiums for non-existent insurance. Upon information and belief, Worthy, Clark, DeLuca, Karns and Katz and their agents - despite receiving the cease and desist letters, continued to solicit CEO Clubs and NABL members, and

16

worse, continued withdrawing premiums from members accounts through at least June of this year, retaining the premiums.

76.  Upon information and belief, after receiving cease and desist letters from CEO Clubs, Clark, DeLuca, Karns and Katz continued converting both premium dollars and membership dues from individuals who thought that they were joining CEO Clubs or NABL, and who thought they were really obtaining insurance.

77.  As of the drafting of this complaint, it appears from postings on the internet that some or all of the Defendants are continuing their criminal enterprise by soliciting non-existent insurance policies through the internet to members belonging to other associations, and leading those with outstanding claims to think that those claims might be paid. As of September 1, 2010, Clark was still falsely advertising on the internet an NABL insurance program insured through U.S.C.T.

## CAUSE OF ACTION NO. 1
**(Unjust Enrichment/Conversion)**

78.  Worthy, Clark, DeLuca, Nellson, Karns and Katz individually and through the entities identified in this complaint, including, but not limited to, IIM, IRG, RBA, Viking and UCST marketed, conspired to market, sold and conspired to sell, non-existent limited liability insurance to members of CEO Clubs and NABL knowing that a valid master policy was not in place, and therefore, a valid certificate of limited medical liability insurance did not exist.

79.  As a consequence of their selling "insurance coverage" when a master policy did not exist, Worthy, Clark, DeLuca, Nellson, Karns and Katz stole and/or misappropriated

premiums from the members of NABL and CEO Clubs members for the non-existent coverage, which they pocketed and which they did not then utilize to pay claims.

80. Worthy, Clark, DeLuca, Nellson, Karns and Katz collected the premium that they then retained through a series of false statements and the publication of documents that contained false statements. These false representations were made to Plaintiffs, Dunn, to prospective reinsurers, association members, regulatory authorities and prospective association members.

81. Worthy, Clark, DeLuca, Nellson, Karns and Katz disseminated the counterfeit documents and the documents containing false statements over the internet, by facsimile, by telephone and through the mail.

82. Worthy, Clark, DeLuca, Nellson, Karns and Katz intended that the counterfeit documents and false statements would be relied upon and these counterfeit documents and documents containing false statements about the existence of insurance coverage were relied upon by CEO Clubs and NABL and the members of each association who paid premiums for insurance coverage that did not exist.

83. The collection and retention of premiums by Worthy, Clark, DeLuca, Nellson, Karns and Katz for non-existent coverage constituted larceny and/or unjust enrichment.

84. Upon information and belief, Worthy, Clark, DeLuca, Karns and Katz and their agents on 4,000 separate occasions received premium dollars totaling in excess of $20,000,000 for which no insurance was provided.

85. Upon information and belief, Worthy, Clark, DeLuca, Karns and Katz and the entities identified herein, as well as through agents, in furtherance of their wide ranging criminal

enterprise, converted more than $20,000,000 in premiums for selling non-existent limited liability medical coverage to members of CEO Clubs and NABL.

86.  Defendants Worthy, Clark, DeLuca, Karns and Katz and the entities named herein that they control converted the premiums and membership dues received and were unjustly enriched, by a sum believed to be in excess of $20,000,000.

87.  By reason of the foregoing, Defendants Worthy, Clark, DeLuca, Nellson, Karns and Katz and the entities that they own and control named herein, are obligated to disgorge all sums that they received/converted as a consequence of the selling of fraudulent and non-existent limited liability insurance coverage to members of CEO Clubs, CEO Benefits and NABL, plus interest, as well as all assets that they acquired through the use of those assets.

88.  Further, a court order is required precluding Worthy, Clark, DeLuca, Nellson, Karns and Katz, as well as all entities that they own or control, from further selling or soliciting members of CEO Clubs, NABL and CEO Benefits, and from withdrawing additional premiums from the association member accounts.

## CAUSE OF ACTION NO. 2
### Breach of Contract

89.  Worthy, Clark, DeLuca, Nellson, Karns and Katz, individually, and through the entities that they controlled and which are named herein, *i.e.*, IRG, IIM, Viking, UCST, agreed to provide insurance and to pay the valid claims arising under that insurance to members of CEO Clubs, CEO Benefits and NABL.

90.  Worthy, Clark, DeLuca, Nellson, Karns and Katz individually, and through the entities that they owned and controlled including, but not limited to, IRG, IIM. Viking, RBA and

UCST, received premiums believed to be in excess of $20,000,000, but left unpaid more than $5,000,000 in claims of CEO Clubs and NABL members.

91. Wherefore, Worthy, Clark, DeLuca, Nellson and Karns, individually and through the entities that they own and controlled are obligated to establish a fund of at least $5,000,000 and to pay the costs associated with the retention of a third party administrator to process those claims and any additional claims that may be made.

## CAUSE OF ACTION NO. 3
## R.I.C.O.

92. As set forth above, Defendants Worthy, Clark, DeLuca, Nellson, Karns and Katz, in conjunction with each other, and acting both individually and through the entities that they owned and controlled, engaged in a prolonged pattern of criminal activity dating back to at least 2004.

93. That pattern of criminal activity is marked by over 4,000 individual, but related, instances of larceny, and countless instances of mail fraud, wire fraud and bank fraud: Each of the Defendants committed substantially more than two predicate acts as set forth above.

94. Members of CEO Clubs and NABL were injured as a result of the Defendants' criminal activity in that they were defrauded out of premium dollars as they purchased non-existent coverage from the Defendants. Members were further injured as insurance was not available to cover otherwise payable claims.

95. Individuals who thought they were paying dues to join NABL and/or CEO Clubs were defrauded as DeLuca, Karns and Katz stole the dues without signing up the prospective member.

96. Plaintiffs CEO Clubs, CEO Benefits and NABL were injured by Defendants' larcenous and fraudulent activities in that they lost members, and thus membership dues, as a result of Defendants' conduct; did not receive membership dues collected by Defendants; were forced at their own expense to contact and communicate with members to cancel the insurance program and to reply to both member and administrative complaints; were forced to retain attorneys to respond to cease and desist orders brought about by Defendants' fraudulent conduct, and have suffered a loss of reputation due to their having to respond to cease and desist consent orders and as a consequence of substantial bad press.

97. As Plaintiffs' injuries are all the direct result of crimes committed by Worthy, Clark, DeLuca, Nellson, Karns and Katz, their companies and agents in furtherance of a prolonged pattern of criminal activity and their conspiracy to commit these crimes and their acts all of which constitute predicate acts under R.I.C.O. 18 U.S.C. §§ 1861(c) and (d), Defendants are obligated to pay the sum of $60,000,000 (3 times the premiums collected), attorneys fees', and exemplary damages.

WHEREFORE, Plaintiffs CEO Clubs, Inc., individually and on behalf of its members; Hudson Valley Consultants, LLC d/b/a CEO Clubs Benefits, individually; and Metropolitan Business Alliance, LLC D/b/a National Association of Business Leadership respectfully request that this Honorable Court enter judgment against the Defendants William M. Worthy, II; David L. Clark; Louis DeLuca; Gary L. Karns, Jr.; Arnold Katz a/k/a Arnie Katz; David L. Nellson a/k/a David Nelson; Viking Administrators, LLC; United States Contractors Trust; IRG Brokerage, LLC d/b/a Insurance Resource Group; Integrated Insurance Marketing, Inc.; and Real Benefits Association, LLC:

1. On the First Cause of Action in the amount of $20,000,000.00;

2. On the Second Cause of Action in the amount of $5,000,000.00;

3. On the Third Cause of Action in the amount of $60,000,000.00;

plus legal fees, interest and exemplary damages.

Dated: Westbury, New York
August 26, 2010

Yours, etc.

_____
Jeffrey B. Gold (JBG9671)
Gold, Stewart, Kravatz, Benes, LLP
Attorneys for Plaintiffs
1025 Old Country Road, Suite 301
Westbury, New York 11590
(516) 512-6333

To: William M. Worthy, II
44 Morgan Place
Isle of Palms, SC 29451-2742

David L. Clark
One Beach Trail
Morristown, New Jersey 07960

IRG Brokerage, LLC
20 Madison Avenue
Valhalla, NY 10595

Louis DeLuca
1106 Smith Ridge Road
New Canaan, CT 06840

Gary L. Karns, Jr.
1145 Highbrook #411
Akron, OH 44301

David L. Nellson
c/o Theresa Baudier

10243 Lexington Lakes Blvd. S
Boynton Beach, FL 33436
and
600 S. Dixie Hwy. Apt. 624
West Palm Beach, FL 33401-5824

Arnold Katz a/k/a Arnie Katz
731 South Highway 101, #2E
Solana Beach, CA 92075

Viking Administrators, LLC
5201 Kingston Pike
Suite 6 #355
Knoxville, TN 37919

United States Contractors Trust
10243 Lexington Lakes Blvd. S
Boynton Beach, FL 33436
and
3455 Peachtree Rd. NE
Suite 500
Atlanta, GA 30326